In the Matter of George & Maryland HART, Debtors.

George and Maryland HART, Plaintiffs,

v.

POSTAL FINANCE COMPANY, A Corporation, Defendant.

In re James A. LINHART, Constance M. Linhart, Debtors.

James A. LINHART, Constance M. Linhart, Plaintiffs,

v.

POSTAL FINANCE COMPANY, a corporation, Defendant.

In re Vernon SHIVELY and Joan Shively, Debtors.

Vernon SHIVELY and Joan Shively, Plaintiffs,

v.

POSTAL FINANCE COMPANY, A Corporation, Defendant.

In re Robert Dean DOUGHERTY, Jr., Diana Marie Dougherty, Debtors.

Robert Dean DOUGHERTY, Jr., Diana Marie Dougherty, Plaintiffs,

v.

POSTAL FINANCE COMPANY, a corporation, Defendant.

In re William LUNSFORD and Maurine M. Lunsford, Debtors.

William LUNSFORD and Maurine M. Lunsford, Plaintiffs,

v.

POSTAL FINANCE COMPANY, A Corporation, Defendant.

In re Dale Allen HOYT and Eva Frances Hoyt, Debtors.

Dale Allen HOYT and Eva Frances Hoyt, Plaintiffs,

v.

POSTAL FINANCE COMPANY, a corporation, Defendant.

In re Lyle Dean WICKWIRE, Alice Ray Wickwire, Debtors.

Lyle Dean WICKWIRE, Alice Ray Wickwire, Plaintiffs,

v.

POSTAL FINANCE COMPANY, Defendant.

In re Donna M. CORTER, a/k/a Donna M. Bachman, Debtor.

Donna M. CORTER, a/k/a Donna M. Bachman, Plaintiff,

v.

POSTAL FINANCE COMPANY, a corporation, Defendant.

Bankruptcy Nos. BK80–2543, BK81–707, BK80–2544, BK81–510, BK80–1753, BK 80–2401, BK81–305 and BK81–258.
Adv. Nos. A81–151, A81–210, A81–206, A 81–205, A81–220, A80–589, A81–216 and A 81–208.

United States Bankruptcy Court, D. Nebraska.

Dec. 14, 1981.

Vincent M. Powers, Lincoln, Neb., for debtors George and Maryland Hart, Vernon and Joan Shively, William and Maurine Lunsford and Donna M. Corter.

Robert C. Wester, Papillion, Neb., for debtors James and Constance Linhart.

Jerome P. Grossman, Omaha, Neb., for debtors Robert and Diana Dougherty.

Clay B. Statmore, Lincoln, Neb., for debtors Dale and Eva Hoyt.

Larry Spain, Scottsbluff, Neb., for debtors Lyle and Alice Wickwire.

Michael F. Kivett, Omaha, Neb., James E. Gordon and Fredda Bisman, Lincoln, Neb., for Postal Finance Co.

DAVID L. CRAWFORD, Bankruptcy Judge.

### MEMORANDUM

Each of the cases joined in this opinion was filed under the Bankruptcy Code of 1979 but involve creditor acquisition of a § 522(f) security interest prior to October 1, 1979, the Code's effective date.

The petitions of George and Maryland HART and James and Constance LINHART seek to use the debtor avoidance power to affect liens which attached prior to November 6, 1978, the Code's enactment date.

The petition of Vernon and Joan SHIVE-LY as well as those of Robert and Diana DOUGHERTY, William and Maurine LUNSFORD, Dale and Eva HOYT, Lyle and Alice WICKWIRE, and Donna CORT-ER deal with security interests attaching during the period between the Code's enactment and its effective date, October 1, 1979.

Many of these complaints were filed after the discharge was granted.

Section 522 was written into the Bankruptcy Reform Act as part of a Congressional scheme to provide debtors a "fresh start" after bankruptcy. The section permits debtors to exempt from their estates certain items of specific value. The list of exemptions, whether federal or state, allows a debtor to retain sufficient assets to continue his daily life with minimal interruption—the fresh start. An integral part of the congressional plan is § 522(f), the debtor avoidance power. By the terms of this section, debtors under the Reform Act may avoid any judicial lien or non-possessory, nonpurchase money security interest in such items as household goods and furnishings, tools of the trade, or certain health aids to the extent such lien impairs an exemption and regardless of any waiver of exemptions.

The recent addition of this debtor lien avoidance power to the bankruptcy proceeding has produced recurring questions for the court typefied by the above-named cases:

1. At what point in the proceeding may the debtor invoke § 522(f); specifically, may a 522(f) complaint be filed after discharge has been granted?

2. May § 522(f) be applied constitutionally to liens incurred between the Code's enactment and its effective date?

3. May the debtor apply § 522(f) retroactively to liens attaching prior to passage of the Bankruptcy Reform Act?

Issue 1: APPLICABILITY OF § 522(f) AFTER DISCHARGE HAS BEEN GRANTED.

The use of § 522(f) is permissive rather than automatic in that the debtor is required to file a complaint if he wishes to invoke his avoidance powers. Nowhere in the language of the Code, however, is any reference made to the timing of this complaint. To deny post-discharge petitions, analogy has been made in recent case law to sections 524(c) reaffirmation, 547(b) preference, or 548(a) fraudulent conveyance limitations. *In re Adkins*, 7 B.R. 325 (Bkrtcy.S.D.Cal.1980); *In re Krahn*, 10 B.R. 770, 7 B.C.D. 767 (Bkrtcy.E.D.Wis. 1981); *Butler v. General Electric Credit Corporation*, 5 B.R. 360 (Bkrtcy.D.Maryland 1980). However, there is nothing in the Bankruptcy Code or Rules or the legislative history of either to indicate that § 522(f) could be invoked only prior to discharge. The imposition of an artificial deadline for filing a 522(f) complaint in fact runs counter to the congressional intent of the section, that of protecting the debtor's exemptions as well as his discharge. In its opinion, *In re Naples*, CCH. Bankr.L.Rep. 67,422 (1980), the U.S. District Court for Connecticut noted that ". . . 522(f) does not provide for any limitation of time within which a judicial lien may be avoided." The debtor in that case was permitted to avoid judicial liens because they impaired an exemption to which the debtor was entitled under 522 without regard to the timing of his complaint.

It would be inconsistent with the congressional scheme of fresh start to deprive an individual filing under the new Code the opportunity to regain his exempt property. The language of the exemption section should, therefore, be read to allow the fullest application of its provisions. Accordingly, post-discharge use of the exemptions through lien avoidance will be permitted.

Issue 2: CONSTITUTIONALITY OF PERMITTING AVOIDANCE OF A SECURITY INTEREST ARISING BETWEEN NOVEMBER 6, 1978 AND OCTOBER 1, 1979.

The Bankruptcy Reform Act was signed into law on November 6, 1978, but did not go into effect until October 1, 1979. Prior to passage of the new Code, lien avoidance

powers were unavailable to the debtor. It has been argued by secured parties who have created such "interim liens" that lien avoidance under these circumstances is a taking of property interests without due process. I respectfully disagree.

Legislative history indicates that Congress intended the substantive provisions of the new Code to apply to all petitioners filing after the effective date. H.R. 95–595, 95th Cong., 1st Sess. (1977) 459, U.S. Code Cong. & Admin.News 1978, p. 5787. It is probable that the purpose of the delay between enactment and effect was to allow creditors, already charged with knowledge that their rights and remedies were to be affected by existing and prospective bankruptcy laws (*In re Prima Co.*, 88 F.2d 785 (7th Cir. 1937).), sufficient time to reconsider their courses of dealing with debtors. Where liens have been negotiated after enactment of the Bankruptcy Code, a creditor so charged should not be permitted to claim surprise at the debtor's use of the provisions of 522(f). *In re Head*, 4 B.R. 521 (Bkrtcy.D. Tenn.1980). Considerable recent case law supports the notice function performed by the Reform Act by upholding § 522(f) avoidance of interim liens: *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981); *In re Osborne*, 11 B.R. 610 (Bkrtcy.D.S.C.1981); *In re Steinart*, 4 B.R. 354 (Bkrtcy.W.D.La.1980); *In re Carroll*, 11 B.R. 45 (Bkrtcy.E.D.N.Y.1981); *In re Baker*, 11 B.R. 125 (Bkrtcy.W.D.Missouri 1981); *In re Burkholder*, 12 B.R. 585 (Bkrtcy.E.D. Pa.1981) (found both preenactment and interim liens constitutional) Accord: *In re Kocher*, 12 B.R. 126 (Bkrtcy.E.D.Pa.1981).

Accordingly it is held that passage of the Bankruptcy Reform Act of 1978 served notice upon creditors that any security interest thereafter acquired in exempt property could become subject to the § 522(f) lien avoidance power of any debtors filing bankruptcy after October 1, 1979. There is no due process violation in granting the avoidance of such interim liens. Creditors are, of course, left with unsecured claims.

Issue 3. CONSTITUTIONALITY OF PERMITTING AVOIDANCE OF A § 522(f) LIEN ATTACHING BEFORE THE CODE'S ENACTMENT.

A serious due process question arises when debtors attempt to avoid judicial liens or certain security interests in exempt property which attached prior to November 6, 1978. Though it is given plenary power to establish bankruptcy laws, Congress may not through its bankruptcy powers take substantive rights in specific property acquired prior to a statute's enactment unless due process requirements are met. *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). This principle was explicitly applied to the effect of § 522(f) upon pre-enactment liens in *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981). That case found retroactive application of the section a violation of due process. A creditor's rights may be impinged by bankruptcy law changes, as they were in *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937) and other contract cases, but a substantive right in specific property cannot be substantially impaired retroactively. *Rodrock*, 3 B.R. 629 at 635.

Some retrospective is implicit in the language of the Code. The date of filing is the determining factor. A debtor filing bankruptcy on or after October 1, 1979, is subject to the Code. Any liens avoided under the new § 522(f) necessarily attached prior to filing bankruptcy. *In re Oldham*, 7 B.R. 124 (Bkrtcy.D.N.M.1980) retrospective application was clearly intended. *Rodrock* at 635.

Holders of interim security interests had been put on notice of the provision by the Code's enactment. Creditors prior to enactment, however, had no such notice nor any reason to suspect that their long-standing courses of dealing were to become ineffective. *In re Hawley*, 4 B.R. 147, 6 B.C.D. 365 (Bkrtcy.D.Or.1980). In no asset cases,

those in which unsecured creditors receive nothing, application of this provision to pre-enactment liens would not only substantially impair but would completely destroy such creditors' rights by reducing formerly secured parties to unsecured status. To extinguish liens which arose before these creditors had notice by passage of the Code is violative of due process. *Matter of Lovett*, 11 B.R. 123 (Bkrtcy.W.D.Missouri 1981); *In re Carroll*, 11 B.R. 45; *In re Schulte*, 8 B.R. 12 (Bkrtcy.D.Kansas 1980); *In re Hawley, supra; In re Pierce*, 4 B.R. 671, 6 B.C.D. 484 (Bkrtcy.W.D.Okl.1980).

One further issue has been submitted to this court, that of the substantial nature of the taking. This court will agree with *Rodrock*, finding that a nonpossessory, nonpurchase money security ·interest in household goods is indeed a substantive right in specific property and as such its taking is subject to 5th Amendment proscriptions. A lien is as compensable a property interest under the constitution as is an interest in real estate *Armstrong v. United States*, 364 U.S. 40, 44, 80 S.Ct. 1563, 1566, 4 L.Ed.2d 1554 (1960). And while it is true that a real estate mortgage may be more valuable than a lien in consumer goods affected by 522(f), it remains a substantive right in specific property. "The Court recoils from the notion that dollar value is the measure of due process ... [its taking] violates due process whether the collateral is worth $5 or $5 million." *In re Hoops*, 3 B.R. 635 (Bkrtcy.D.Colo.1980) at 640. A debtor will not be allowed to argue that there has been no substantial taking simply because the market value of his household goods is negligible. Accordingly, it is held that liens attaching on or after November 6, 1978, but not those arising before are subject to the debtor's 522(f) avoidance powers.

I should note that although the present holding denies avoidance to pre-November 6, 1978, liens, debtors are not without some remedy. Section 722 continues to afford a remedy of redemption unless, of course, a constitutional issue of its validity exists, an issue not litigated or decided here.

Finally, the issue arises as to which date governs on a loan originated before the Code's enactment date but refinanced during the gap period between the enactment date and the effective date. Given the probable reason for the delay between enactment and effect (a time for credit adjustment) I conclude that the refinancing date governs.

The complaints of George and Maryland Hart, and James and Constance Linhart are dismissed. Those of Robert and Diana Dougherty, William and Maurine Lunsford, Dale and Eva Hoyt, Lyle and Alice Wickwire, Donna Corter and Vernon and Joan Shively as to the lien arising after enactment of the Code are to proceed to ultimate resolution.

Separate judgments are entered in conformity with the foregoing.